WO             IN THE UNITED STATES DISTRICT COURT

FOR THE DISTRICT OF ARIZONA

JEFFREY SCHILLER, et al., )
                          )
        Plaintiffs,       )
                          )
    vs.                   )
                          )
RITE OF PASSAGE, INC.,    )
                          )   No. 2:13-cv-0576-HRH
        Defendant.        )
_____)

O R D E R

Motion for Summary Judgment

Defendant moves for summary judgment.[1] This motion is opposed.[2] Oral argument was not requested and is not deemed necessary.

Facts

The named plaintiffs in this FLSA collective action[3] are Jeffrey Schiller, Tyrice Roderick, Michael Frantz, Chris Washington, Brian Poirier, David Teran, and Daniel Keys.

---

[1]Docket No. 186.

[2]Docket No. 187.

[3]The court conditionally certified this FLSA action as a collective action on February 19, 2014. Docket No. 63.

-1-

The remaining opt-in plaintiffs are Carlington Chevannes, Dana Daitre, William Kennedy, Rodney Smith, Khary Stanley, Nichola Willis, Abel Aguilar, John Slevin, Matthew Williams, Dennis Pettitt, Nathan Watbaum, Regina Garcia, Constantine Keele, Cristobal Rivera, Joseph Bottjer, Cloyce Cramer, Terrance Johnson, Sidney Woods, John Mottis, Sr., Johnny Delgado, Rudolph King, Jr., Christopher Lujan, Jimmie Joseph, Dwayne Anderson, and Kenneth Mahone. The named plaintiffs and opt-in plaintiffs (referred to herein collectively as plaintiffs) are or were employees of defendant Rite of Passage, Inc.

Plaintiffs were all employed, at some point in time, as full-time Group Living Coach Counselors at Canyon State Academy, a residential facility operated by defendant. Coach Counselors are responsible for supervising and mentoring the student-athletes who reside at Canyon State. When plaintiffs were hired, they signed a "Coach Counselor Payroll Declaration" which provided:

> I understand and accept that my employment is considered an alternative shift of 48 continuous hours with appropriate breaks and sleep time. I agree that each 48 hour shift consists of three (3) 24-hour days and one (1) 7 hour day.... Twenty-four hour days include 14 hours of work time, two (2) hours of uncompensated break time and an unpaid eight (8) hours of sleep time. The one 7-hour day includes six (6) hours of work time and one (1) hour of uncompensated break time. Work related interruptions during sleep time will be compensated. If work related interruptions prevent five (5) hours of continuous sleep, I will be compensated for the entire day.[4]

---

[4] Exhibit 10, Defendant's Motion for Summary Judgment, Docket No. 186.

As full-time Coach Counselors at Canyon State, plaintiffs generally worked the "A" shift or the "B" shift. Coach Counselors who worked the "A" shift were required to be "clocked in" from 6:00 a.m. to 10:00 p.m. on Sunday, Monday, and Tuesday and from 6:00 a.m. to mid-afternoon on Wednesday. Coach Counselors who worked the "B" shift were required to be "clocked in" from early to mid-afternoon to 10:00 p.m. on Wednesday and from 6:00 a.m. to 10:00 p.m. on Thursday, Friday, and Saturday. On the days the Coach Counselors were required to be "clocked in" from 6:00 a.m. to 10:00 p.m., they were given a two-hour uncompensated break during the day, which meant that they were paid for 14 hours of work on those days. Opt-in plaintiff Keele testified that Coach Counselors could leave campus during these two-hour breaks although he rarely did and that he did not believe that he was on-call during this break.[5] Named plaintiff Johnson testified that he would usually leave campus during this two-hour break and that he believed that he was on-call during this break.[6]

Coach Counselors were also required to sleep at Canyon State in a designated cottage one night during their shift. Defendant contends that the designated sleep time on these nights was from 10:00 p.m. until 6:00 a.m. Rick Wright, defendant's corporate

---

[5]Deposition of Constantine Keele at 21-24, Exhibit 18, Defendant's Motion for Summary Judgment, Docket No. 186.

[6]Deposition of Terrance Devorea Johnson at 20:13-22, Exhibit 17, Defendant's Motion for Summary Judgment, Docket No. 186.

Human Resources Director, avers that "[a]t no time has ROP policy provided for a 'break' during the designated eight-hour sleep time period."[7] It is undisputed that plaintiffs were required to "clock out" at 10:00 p.m. on the nights that they slept at Canyon State and that they were not allowed to clock back in until 6:00 a.m. the next morning. It is also undisputed that plaintiffs remained "on call" during their sleep time on the nights that they were required to stay overnight. Wright avers that Canyon State

> implemented this sleep requirement to ensure that each cottage has one Coach Counselor and one member of the Awake Night Staff during the overnight hours. Under this system, the Awake Night Staff can alert and enlist the assistance of the Coach Counselor if an emergency arises in the cottage. [Defendant] does not, and has not, utilized Coach Counselors who sleep on sight overnight to satisfy State of Arizona licensing requirements.[8]

Plaintiffs, however, contend that they were free to leave the Canyon State campus on these nights from 10:00 p.m. until midnight, but that they were required to be back on campus in their assigned cottage by midnight. For example, opt-in plaintiff Aguilar testified that he would clock out at 10:00 p.m. "go home, shower, get something to eat if I needed to, hang out with my wife a little bit and then come back."[9] Aguilar testified that

---

[7]Declaration of Rick Wright [etc.] at 2, ¶ 4, Exhibit 2, Defendant's Motion for Summary Judgment, Docket No. 186.

[8]Id.

[9]Deposition of Abel Aguilar at 31:25-32:2, Exhibit 20, Defendant's Motion for
(continued...)

"we were required to be back at midnight, so I was back at midnight."[10] Opt-in plaintiff Delgado testified that he would leave after he clocked out but he was told during orientation that he had to be back by midnight.[11] Named plaintiff Frantz testified that he would clock out at 10 p.m. and then "[s]ometimes I'd go home, sometimes I'd go to my truck, get my bag and go right back to the cottage."[12] Named plaintiff Frantz testified that he was told during orientation that he had to be back on-site by midnight on the nights he was required to stay overnight.[13] Named plaintiff Keys testified that he would just head to bed after he clocked out on the nights he had to stay overnight because there was not enough time to do anything else because he had to be back by midnight.[14] Opt-in plaintiff King testified that it was understood that Coach Counselors could leave for the two hours

---

[9](...continued)
Summary Judgment [etc.], Docket No. 186.

[10]Id. at 32:5-6.

[11]Deposition of Johnny Luera Delgado at 29:5-30:7, Exhibit 21, Defendant's Motion for Summary Judgment, Docket No. 186.

[12]Deposition of Michael Franz at 22:8-13, Exhibit 4, Defendant's Motion for Summary Judgment, Docket No. 186.

[13]Id. at 23:2-4.

[14]Deposition of Daniel Keys at 38:11-25, Exhibit 5, Defendant's Motion for Summary Judgment, Docket No. 186.

between 10 p.m. and midnight, but that they had to be back by midnight.[15] Named plaintiff Roderick testified that he was told when he was hired that on the nights he was required to stay overnight, he had to be back on campus by midnight.[16] Named plaintiff Schiller testified that on the nights that he was required to stay overnight, he could leave the campus at 10:00 as long as he was back on campus by midnight.[17] Named plaintiff Washington testified that he was told that on the nights he was required to stay overnight, he had to clock out at 10:00 p.m., could leave campus if he wanted, but had to be back on campus by midnight.[18] Plaintiffs contend that they were subject to discipline if they were not back on campus by midnight.[19]

Named plaintiffs Schiller, Roderick, and Frantz commenced this action on March 20, 2013. Named plaintiffs Keys, Poirier, Teran, and Washington were added with the filing of plaintiffs' second amended complaint. The second amended complaint contains three

---

[15] Deposition of Rudolph Z. King, Jr. at 52:10-20, Exhibit 22, Defendant's Motion for Summary Judgment, Docket No. 186.

[16] Deposition of Tyrice Roderick at 13:2-13, Exhibit 6, Defendant's Motion for Summary Judgment, Docket No. 186.

[17] Deposition of Jeffrey Allen Schiller at 53:12-25, Exhibit 7, Defendant's Motion for Summary Judgment, Docket No. 186.

[18] Deposition of Christopher Joseph Washington at 34:24-35:11, Exhibit 9, Defendant's Motion for Summary Judgment, Docket No. 186.

[19] Roderick Deposition at 21:8-9, Exhibit 6, Defendant's Motion for Summary Judgment, Docket No. 186.

counts. In Count One, the Named plaintiffs assert a FLSA overtime claim individually and on behalf of others similarly situated, in which they allege that they should have been paid for their sleep time on the nights they were required to stay overnight at Canyon State. In Count Two, Frantz and Washington assert FLSA retaliation claims. In Count Three, the Named plaintiffs assert Arizona Wage Act (AWA) claims, alleging that they have not been paid the compensation they were due for their sleep time on the nights that they had to sleep on campus.

Defendant now moves for summary judgment on plaintiffs' claims.

## Discussion

Summary judgment is appropriate when there are no genuine issues of material fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). The initial burden is on the moving party to show that there is an absence of genuine issues of material fact. Celotex Corp. v. Catrett, 477 U.S. 317, 325 (1986). If the moving party meets its initial burden, then the non-moving party must set forth specific facts showing that there is a genuine issue for trial. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 247-48 (1986). In deciding a motion for summary judgment, the court views the evidence of the non-movant in the light most favorable to that party, and all justifiable inferences are also to be drawn in its favor. Id. at 255. "[T]he court's ultimate inquiry is to determine whether the 'specific facts' set forth by the nonmoving party, coupled with undisputed background or

contextual facts, are such that a rational or reasonable jury might return a verdict in its favor based on that evidence." T.W. Elec. Service, Inc. v. Pacific Elec. Contractors Ass'n, 809 F.2d 626, 631 (9th Cir. 1987).

### The FLSA overtime claims

The FLSA requires employers to pay employees at least the federally-prescribed minimum wage and one-and-a-half times the employee's regular rate of pay for hours worked above forty hours in a workweek, unless the employee is exempt. 29 U.S.C. §§ 206(a), 207(a). An "employer who claims an exemption from the FLSA has the burden of showing that the exemption applies[.]" Donovan v. Nekton, Inc., 703 F.2d 1148, 1151 (9th Cir. 1983). Whether an employee's activities "exclude[] him from the overtime benefits of the FLSA is a question of law...." Bothell v. Phase Metrics, Inc., 299 F.3d 1120, 1124 (9th Cir. 2002). But how the employee "spent his working time is a question of fact...." Id. "Because the FLSA 'is to be liberally construed to apply to the furthest reaches consistent with Congressional direction ... FLSA exemptions are to be narrowly construed against ... employers and are to be withheld except as to persons plainly and unmistakenly within their terms and spirit.'" Id. at 1124-25 (quoting Klem v. County of Santa Clara, 208 F.3d 1085, 1089 (9th Cir. 2000)). "'The criteria provided by regulations are absolute and the employer must prove that any particular employee meets every requirement before the

employee will be deprived of the protection of the Act.'" Id. (quoting Mitchell v. Williams, 420 F.2d 67, 69 (8th Cir. 1969)).

The parties disagree as to whether the exemption in 29 C.F.R. § 785.22(a) applies here. Section 785.22(a) provides:

> Where an employee is required to be on duty for 24 hours or more, the employer and the employee may agree to exclude bona fide meal periods and a bona fide regularly scheduled sleeping period of not more than 8 hours from hours worked, provided adequate sleeping facilities are furnished by the employer and the employee can usually enjoy an uninterrupted night's sleep. If sleeping period is of more than 8 hours, only 8 hours will be credited. Where no expressed or implied agreement to the contrary is present, the 8 hours of sleeping time and lunch periods constitute hours worked.

Defendant argues that the Coach Counselor Payroll Declarations that plaintiffs signed constitute an agreement that plaintiffs would not be paid for their eight hours of sleep time during their 24-hour shifts. Plaintiffs, however, argue that they did not actually work 24-hours shifts on the nights they were required to stay overnight because they were not required to be "on duty" for 24 hours but rather were allowed to leave campus for a two-hour period between 10:00 p.m. and midnight. Plaintiffs emphasize that they were required to "clock out" at 10:00 p.m. and "clock back in" at 6:00 p.m. on all three nights that defendant contends they were working 24-hour shifts. Plaintiffs seem to be suggesting that during some of this time, they were not working; and thus there was a break in the 24-hour period. Plaintiffs also argue that they were being required to stay overnight in their

assigned cottages for defendant's benefit and that this was not simply a case of the employer requiring the employee to be "on the premises." Plaintiffs argue that the eight-hours of sleep time was not "time off" that just happened to be spent on the employer's premises, but rather time that was spent on the employer's premises to benefit the employer. Thus, plaintiffs insist that during their sleep time, they were "engaged to wait." Whenever an employee is "engaged to wait" in the sense that his time belongs to and is controlled by the employer, the employee is working. See 29 C.F.R. § 785.15. Thus, plaintiffs argue that they should be paid for the six hours they were required to stay overnight in their cottages.

However, although it is undisputed that plaintiffs were free to leave the campus between 10:00 p.m. and midnight, it is also undisputed that they were subject to being called back to work. Plaintiffs were not freed from all work responsibilities during this two-hour period but rather continued to be "on duty." Plaintiffs' situation was much different from that of the houseparents in Nelson v. Alabama Institute For Deaf and Blind, 896 F. Supp. 1108, 1110 (N.D. Ala. 1995). There, houseparents argued that they were entitled to be paid for their sleep time because they were not really working 24-hour shifts. Id. at 1110. The houseparents either "work[ed] from Sunday morning until Wednesday, sleeping on the AIDB premises Sunday, Monday, and Tuesday nights" or "from Wednesday until Sunday morning, sleeping on AIDB premises Wednesday, Thursday,

-10-

Friday, and Saturday nights." Id. at 1111. Monday through Friday, the houseparents were "allowed to leave the premises without any realistic means for being contacted" from 8:00 a.m. to 2:00 p.m. Id. The court found that this "free time" meant that the houseparents were not actually working a 24-hour shift and the court concluded that the houseparents should have been paid for their sleep time. Id. at 1112; see also, Lott v. Risby, 746 F. Supp. 1084, 1089 (N.D. Ga. 1990) (noting that the "plaintiffs in the present case were on duty less than 24 hours per day for the entire duration of their employment" because they were relieved from all work responsibilities for a significant part of the day). But here, plaintiffs were not given significant "free time" during their 24-hour shifts, but rather were required to be available for work between 10 p.m. and midnight on the nights they were required to stay overnight at Canyon State. Opt-in plaintiff Delgado testified that it was "always a possibility you'd be called in."[20] Named plaintiff Johnson testified that between 10:00 p.m. and midnight, "it was like I was on call."[21] Opt-in plaintiff King testified that it was understood that Coach Counselors were on-call from 10:00 p.m. to 6:00 a.m. on the nights that they were required to sleep on campus.[22] Named plaintiff Poirier testified that

---

[20]Delgado Deposition at 34:10-17, Exhibit 21, Defendant's Motion for Summary Judgment, Docket No. 186.

[21]Johnson Deposition at 40:16-22, Exhibit 17, Defendant's Motion for Summary Judgment, Docket No. 186.

[22]King Deposition at 44:1-7, Exhibit 22, Defendant's Motion for Summary Judgment, (continued...)

he was in fact called back in during the "break" between 10:00 p.m. and midnight.[23] Because plaintiffs were "on-call", the two-hour period between 10:00 p.m. and midnight did not severe their 24-hour duty time.

The sleep time exclusion applies if the employee is "on duty" for 24 hours or more and the employer and employee have agreed to exclude eight hours of sleep time. Plaintiffs worked 24-hour shifts on the days they were required to stay overnight at Canyon State and plaintiffs agreed to exclude eight hours of sleep time when they signed their Payroll Declarations. Thus, plaintiffs met the requirements of the exemption in 29 C.F.R. § 785.22(a), and defendant was not required to pay plaintiffs for their sleep time. Defendant's motion for summary judgment on plaintiffs' FLSA overtime claims is granted.

<u>AWA claims</u>

In Count Three, the Named plaintiffs assert AWA claims. Arizona Revised Statutes § 23–351(C)(3) provides that "[o]vertime or exception pay shall be paid no later than sixteen days after the end of the most recent pay period." The Named plaintiffs contend that they were not timely paid the overtime they were due for their sleep time. Defendant argues

---

[22](...continued)
Docket No. 186.

[23]Deposition of Brian Matthew Poirier at 45:21-46:8, Exhibit 19, Defendant's Motion for Summary Judgment, Docket No. 186.

that if it is entitled to summary judgment on plaintiffs' FLSA claim, which it is, then it is also entitled to summary judgment on the Named plaintiffs' AWA claim.

Plaintiffs' argument that their AWA claims require a separate analysis to see if defendant failed to timely pay plaintiffs wages they were due is meritless. Except for certain law enforcement officers, the Arizona wage law contains no overtime provision. The cases to which plaintiffs cite involved A.R.S. § 23-392 which provides for overtime compensation for certain law enforcement officers. But, this case does not involve law enforcement officers. The Named plaintiffs' AWA claims fail because plaintiffs' FLSA claims fail. Defendant's motion for summary judgment on the Named plaintiffs' AWA claims is granted.

FLSA retaliation claims

"The FLSA's anti-retaliation provision, 29 U.S.C. § 215(a)(3), provides that it shall be unlawful for 'any person' to 'discharge or in any other manner discriminate against any employee because such employee has filed any complaint or instituted or caused to be instituted any proceeding under or related to this Act...'" Singh v. Jutla & C.D. & R's Oil, Inc., 214 F. Supp. 2d 1056, 1059 (N.D. Cal. 2002).

> The elements of a retaliation claim under § 15(a)(3) of the FLSA's anti-retaliation provision are: (1) the plaintiff must have engaged in statutorily protected conduct under § 15(a)(3) of the FLSA, or the employer must have erroneously believed that the plaintiff engaged in such conduct; (2) the plaintiff must have suffered some adverse employment action; and (3) a

> causal link must exist between the plaintiff's conduct and the employment action.

Id.

The dispute here is over whether Frantz and Washington suffered any adverse employment action because they are plaintiffs in this lawsuit. "An action taken by an employer is retaliatory if a reasonable employee would have found the challenged action materially adverse, which in this context means it well might have dissuaded a reasonable worker from making or supporting a FLSA complaint." Perez v. ACME Universal, Inc., No. CV 12 00008, 2014 WL 1378241, at *5 (D. Guam Apr. 8, 2014) (citation omitted).

Although Frantz and Washington alleged a variety of adverse employment actions, they now focus their argument on their allegation that they were given less opportunities to work after they joined this lawsuit.[24] In April 2013, Frantz and Washington voluntarily became part-time Coach Counselors. Part-time Coach Counselors work on a "as needed" basis and have no set schedule and no guaranteed hours. Frantz and Washington contend that they were called less often after they joined this lawsuit.

Frantz testified in particular about an incident that occurred in May 2014. Frantz testified that he asked Bobby Howell, who was a supervisor at Sycamore State, another

---

[24]Because Frantz and Washington have failed to advance arguments as to the other alleged retaliatory conduct, the court deems any FLSA retaliation claims other than those based on Frantz and Washington being called into work less frequently abandoned. See Leer v. Murphy, 844 F.2d 628, 634 (9th Cir. 1988) ("Issues raised in a brief which are not supported by argument are deemed abandoned.").

facility owned by defendant, why Howell was not calling him to work, and Howell told Frantz that he received a list of all the part-time Coach Counselors at Canyon State who might be able to work at Sycamore State and that Frantz's and Washington's names were not on that list. Frantz testified that Howell told him (Frantz) that Brian Heath, an executive director for defendant, told Howell not to call Frantz any more.[25] Heath denies that he directed anyone to exclude Frantz and Washington "from any list of part-time, on-call Coach Counselors who could work at either CSA or SCA."[26] Heath avers that he was surprised to see Frantz's name on a dry erase board listing the names of individuals working at Sycamore State because he "understood that Mr. Frantz was already substitute teaching at Canyon State...."[27] Washington testified that he was called less often after he became involved in this lawsuit. He testified that he "went from being there [at Canyon State] five days a week twice a day to being there once every couple of weeks, or every so often."[28]

---

[25]Deposition of Michael Frantz at 52-55, Exhibit 3, Plaintiffs' Response to Defendant's Motion for Summary Judgment, Docket No. 187.

[26]Declaration of Brian Heath [etc.] at ¶ 3, Exhibit 27, Defendant's Motion for Summary Judgment, Docket No. 186.

[27]Id. at ¶ 2.

[28]Washington Deposition at 52:5-7, Exhibit 4, Plaintiffs' Response to Defendant's Motion for Summary Judgment, Docket No. 187.

Defendant argues that Frantz's and Washington's contention that they were denied opportunities to work because of their involvement in this lawsuit fails because they continued to be called for work after they joined this action and they worked more than other part-time Coach Counselors who were not parties. Defendant offers evidence showing that Frantz and Washington logged hours in at least two pay periods per month from April 2013 to December 2013, while "Aaron Stocks, someone who is not a party to this lawsuit, logged hours during just one pay period ... while working as a PTOC Coach Counselor between May 26, 2013 and September 5, 2013."[29] Defendant also offers evidence that no Canyon State part-time coach counselors worked at Sycamore State after the March 2014 list was prepared,[30] which defendant argues means that Frantz and Washington cannot show that this was an adverse employment action. And defendant offers evidence that the person who prepared the list, Teah Hopkins, was not directed to exclude Frantz or Washington from the list.[31]

The facts as to Frantz's and Washington's FLSA retaliation claims are in dispute. They contend that they were called in to work less after this lawsuit was filed. The fact that

---

[29]Wright Declaration at 3-4, ¶ 8, Exhibit 2, Defendant's Motion for Summary Judgment, Docket No. 186.

[30]Id. at 4, ¶ 9.

[31]Declaration of Teah Hopkins [etc.] at ¶ 3, Exhibit 28, Defendant's Motion for Summary Judgment, Docket No. 186.

they were still called in two pay periods per month does not necessarily mean that they were not being called less often because of this litigation.  Being called in to work less often is action that a reasonable employee would find materially adverse.  Defendant's motion for summary judgment on Frantz's and Washington's FLSA retaliation claims is denied.

## Conclusion

Defendant's motion for summary judgment[32] is granted in part and denied in part.  Defendant's motion is granted as to plaintiffs' FLSA overtime claims and the Named plaintiffs' AWA claims.  Defendant's motion is also granted as to Frantz's and Washington's FLSA retaliation claims except for the claims based on allegations that they were called into work less frequently after they became plaintiffs in this matter.  Defendant's motion is otherwise denied.

DATED at Anchorage, Alaska, this 18th day of August, 2015.

/s/ H. Russel Holland
United States District Judge

---

[32]Docket No. 186.